AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Eastern District of Louisiana

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ROBERT DURST | ) | Case No. |
| | ) | 15-049 MAG |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 14, 2015__ in the parish of __Orleans__ in the __Eastern__ District of __Louisiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent William C. Williams, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/07/2015

_____
*Judge's signature*

City and state: New Orleans, Louisiana

Honorable Sally Shushan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

1. I, Special Agent William C. Williams, ("Affiant") being first duly sworn, hereby depose and state as follows:

2. I am a Special Agent with the Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since December 2002. For the past seven years I have been assigned to the FBI New Orleans Violent Crime Task Force ("NOVCTF"). As such, I am tasked with investigations involving violent crimes including, but not limited to kidnapping, murder, and violations of federal firearm laws.

3. I am personally familiar with the facts and circumstances surrounding this investigation from my own investigative activities and from information obtained from other law enforcement officers with personal knowledge of the facts. The following information was obtained by me personally or has been provided to me by special agents of the FBI or Task Force Officers (TFO hereinafter) thereof.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. On the late morning or early afternoon of March 14, 2015, I was informed by the Los Angeles Division of the Federal Bureau of Investigation (LA hereinafter) that a probable cause arrest warrant for **ROBERT DURST**, a white male, date of birth xx/xx/1943, had been issued in California on a charge of murder. Information developed by the Los Angeles Police Department ("LAPD") suggested that DURST may be a guest, or may be found, at the J.W. Marriott Hotel in New Orleans. LA requested that I respond to the J.W. Marriott Hotel to determine if DURST was a guest at the hotel.

6. Agents in the New York Division (NY hereinafter) and LA advised me that **DURST** was the subject of, and participated in, an HBO network documentary, titled "The Jinx," covering murders that **DURST** is alleged to have committed. The last episode of the documentary aired on March 15, 2015. I had been previously advised that **DURST** apparently fled his Houston, Texas, residence on or about March 10, 2015, and information derived in California suggested that his last known whereabouts were eastbound on Interstate 10. Further, I was advised that **DURST** had allegedly stated that his last interview would be conducted in Cuba or Havana.

7. On the afternoon of March 14, 2015, SA Crystal Bender and I responded to the J.W. Marriott Hotel located at 614 Canal Street, New Orleans, Louisiana, which is in the Eastern District of Louisiana. A query by hotel management indicated that **DURST** had not checked in under his given name or any of the approximately 11 aliases NY provided.

8. While standing in the lobby of the hotel, at approximately 4:30 to 4:40 PM, SA Bender and I observed an individual fitting **DURST's** description walking through the lobby area of the hotel. **DURST** was wearing a jacket, baseball style cap, and a backpack. I approached **DURST**, and stated "**Mr. DURST**" several times. The individual would not verbally acknowledge his name, but did look at me when I stated "**Mr. DURST**". I verbally, and through a display of credentials, identified myself as a Special Agent of the FBI. The individual was asked if he had any identification as he would not verbally acknowledge his name as **ROBERT DURST**. The individual advised that he did not have identification on his person (which was later determined to be a lie), however, he had a passport in his room. I asked the individual under what name he was checked into the hotel, to which he replied Everette Ward. Based on interaction with, and physical characteristics of, the individual, both Special Agent

2

Bender and I believed this person to be **ROBERT DURST**. I informed **DURST** there was a warrant for him in California, and that I had to verify the warrant. **DURST** was instructed to sit in the lobby area while the referenced warrant was verified.

9. At approximately 5:15 PM, LAPD detectives and/or an LA Special Agent confirmed the warrant and informed me that the same would be imminently entered into NCIC. I informed **DURST** that the California warrant had been verified, and that he would be booked into Orleans Parish Prison to await further court action. I explained to **DURST** that I wished to gather **DURST's** belongings from **DURST's** room for transport with him to Orleans Parish Prison. The property then would have been subsequently transported to the New Orleans Police Department's ("NOPD") Central Evidence and Property for safekeeping. **DURST** did not object to gathering his belongings, and provided his room number. At or about this time, TFO Saunders Craine was requested to respond to the J.W. Marriott Hotel so that he could book **DURST** into Orleans Parish Prison.

10. **DURST's** room key was obtained from **DURST's** person, and at approximately 5:20 PM, Special Agent Bender and I escorted **DURST** to room 2303 of the referenced hotel to inventory and itemize his belongings and to review the passport he stated was in his room. I again explained to **DURST** that I wished to inventory and itemize his belongings so that he could be provided a receipt and the same would be placed with NOPD for safekeeping. **DURST**, surprised that a receipt would be given, was reassured that I believed that Orleans Parish Prison would allow him to keep the itemization receipt for his belongings. **DURST** was frisked for Agent safety and asked to be seated in a hotel room chair where his left arm was cuffed to a room table again for Agent safety.

3

11. I repeatedly asked if **DURST** had any money or valuables which **DURST** needed to be collected and itemized. SA Bender began taking notes of the inventory so that the same could be converted to an FBI Receipt for Property, and I took photographs of the belongings. **DURST** advised that the only money he had was in a backpack on the floor of the room. I immediately retrieved this backpack in order to itemize the money. However, upon opening the bag, a large plastic bag containing a green vegetable matter suspected to be marijuana was discovered. Below the suspected marijuana were envelopes containing a significant number of 100's in U.S. currency.

12. In an effort to account for any automobile **DURST** may have driven to (or in) New Orleans, I inquired if **DURST** drove or flew into New Orleans. **DURST** advised that he drove, and, in words to the effect, stated that the car was "for the name of the person he checked in under."

13. As the inventory continued, I opened and itemized the backpack on **DURST's** person when he was detained in the lobby. Among other items found in the backpack was a Texas identification card in the name of Everette Ward. As referenced above, **DURST** had previously informed me and Agent Bender that he had no identification on his person.

14. As the inventory continued, **DURST** spontaneously volunteered that he had a "revolver" in his jacket that was hanging in the closet. Soon after **DURST's** statement, TFO Craine arrived at room 2303, and along with SA Bender recovered a Smith and Wesson .38 caliber revolver, loaded with four live rounds and one spent casing, from **DURST's** jacket.

15. I again asked **DURST** if he had any other money or valuables hidden away in the room that he would like to have itemized so that they did not get left behind. **DURST** advised

4

that he had identified all of the money in his room. However, **DURST** pointed out a hand written note in plain view on the bedside table which **DURST** advised was a tracking number for money that would arrive at the hotel on Tuesday via UPS.

16. At approximately 6:30 PM, I was in telephonic contact with an LA Agent regarding the arrest of **DURST**. Soon thereafter, I was telephonically contacted by LAPD detectives who were at the time in Houston, Texas, investigating their murder case against **DURST**. The LAPD detectives requested that I cease inventory and itemizations of **DURST's** belongings, and secure the referenced room, as they were driving to New Orleans and would be seeking a search warrant for the same.

17. LAPD Detective Mike Whelan, along with Orleans Parish District Attorney Investigator James O'Hern, obtained a search warrant for room 2303 of the referenced hotel. While some of the observations made by SAs Williams and Bender were known to Detective Whelan, any such observations made in room 2303 or any statements made by **DURST** while in the room were NOT used to develop probable cause (or asserted as such in Detective Whelan's affidavit) in obtaining the search warrant. Per the above request, inventory activity was ceased and the room secured.

18. Subsequent to **DURST** being transported to Orleans Parish Prison, several detectives with LAPD arrived at the hotel to assist in securing the room, and informed me that Detective Whelan was in the process of swearing out the referenced search warrant. At approximately 2:00 AM on March 15, 2015, Detective Whelan advised the LAPD detectives on scene that the search warrant for the room and the automobile **DURST** was driving had been signed, and at approximately 2:05 AM, the search warrant was executed.

5

19.     All items in the room were photographed and itemized per the search warrant. The Smith and Wesson .38 caliber revolver, serial number CVU9125, along with the suspected marijuana, and all other items found in the room and car, were transported to the New Orleans Division FBI office immediately after the search for safekeeping. Subsequent testing of the firearm by the NOPD crime lab confirmed that it functions.   Based on research, I determined that the Smith and Wesson .38 caliber revolver was manufactured in Springfield, Massachusetts. Therefore, because the gun was located in the Eastern District of Louisiana, it travelled in and affected interstate commerce.

20.     **DURST** was previously convicted, after pleading guilty, in 2004 in the United States District Court for the Eastern District of Pennsylvania of violations of 18 U.S.C. § 922 (g)(2) and (n), Interstate Transportation of a Firearm and Possession of Firearm by a Fugitive From Justice and Interstate Shipment or Transportation of a Firearm by a Person Under Indictment for a Felony, respectively, in case number 2004-667-01. This prior federal felony conviction was for crimes that were punishable by a term of imprisonment exceeding one year. **DURST** fled to Pennsylvania from Texas after being charged with the murder of Morris Black in Galveston, Texas, and was found to be in possession of two firearms in Pennsylvania.[1]

---

[1] Durst was also convicted in Galveston County, Texas, of Felony Bail Jumping and Felony Tampering/Fabricating Physical Evidence with the Intent to Impair/Desecration of a Corpse in case numbers 050119000101 and 050403230101, respectively, in connection with the Morris Black homicide investigation.

6

21. I submit that this affidavit supports probable cause demonstrating that **ROBERT DURST** violated 18 U.S.C. § 922 (g)(1), Possession of a Firearm by a Felon, in as much as **DURST** was found to be in possession of the above referenced Smith and Wesson .38 caliber revolver.

Special Agent William C. Williams
Federal Bureau of Investigation

Subscribed to and sworn before me,
this ___ day of April, 2015,
in New Orleans, Louisiana.

HONORABLE SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

7